UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SOUTH LOUISIANA ETHANOL,                          CIVIL ACTION
L.L.C., ET AL.

VERSUS                                            NO: 11-2715
                                                  c/w  12-0379

FIREMAN'S FUND INSURANCE                          SECTION: "B" (4)
COMPANY, ET AL.

ORDER

Before the Court is Defendant, Whitney Bank's, ("Whitney") **Motion of Whitney Bank to Compel**

**the Continuation of the 30(b)(6) Deposition of Southern Scrap Metal Company, L.L.C.'s**

**Designated Deponent and Motion for Attorney's Fees, Costs, and Sanctions (R. Doc. 88)**,

seeking a continuation deposition of Defendant, Southern Scrap Metal Company, L.L.C.'s,

("Southern Scrap") 30(b)(6) witness, Jason Passantino ("Passantino").  The motion also requests

several types of sanctions incurred in connection with filing the instant motion.  The motion is

opposed (R. Doc. 93), and Whitney has filed a Reply (R. Doc. 95).  The motion was heard by oral

argument on March 13, 2013.

I.      **Factual Background**

        This is a suit for breach of contract and fraud filed by Plaintiff, South Louisiana Ethanol,

L.L.C. ("South Louisiana").[1]  In its Complaint, South Louisiana alleges that in 2006 it became the owner of a forty-nine acre site in Belle Chase, Louisiana.  (R. Doc. 1-1, p. 3).  The site contained a non-operational ethanol plant, which South Louisiana intended to restore and reconfigure.  *Id.*  To that end, it contracted with ENGlobal Engineering, Inc. ("EEI") to produce engineering plans to restore the facility.  *Id.*  EEI then designated ENGlobal Construction Resources, Inc. ("ENG") as the "Prime Subcontractor" for the restoration project.  *Id.*  ENG then "entered into various subcontracts" with Precision Combustion Technology, L.L.C. ("PCT"), whose members included Robert Leon Russell ("Russell"), Eric Jacob Messer ("Messer"), Cyntha Glaze and Steven Zane Glaze (collectively, the "PCT Employees").  *Id.*  Among other tasks, the PCT employees routinely entered subcontracts on behalf of PCT, which South Louisiana alleges incorporated the terms of its contract with EEI by reference.  *Id.*

One of the tasks PCT conducted under its contractual obligations was to purchase equipment for South Louisiana's ethanol plant.  *Id.*  PCT's practice was to purchase equipment for shipment to PCT's yard, and to bill South Louisiana directly for the purchase.  *Id.* at 5.  However, South Louisiana alleges that certain equipment so purchased arrived at PCT's yard and was then sold at a discount to a third party, Southern Scrap.  *Id.*  In the instant suit, South Louisiana alleges PCT sold

---

[1]South Louisiana originally filed this case in the Twenty-Third Judicial District Court of Louisiana, Ascension Parish, on June 8, 2011 (R. Doc. 1-1, p. 1).  The case was duly removed to the U.S. District Court for the Middle District of Louisiana on June 24, 2011.  (R. Doc. 1).  The basis for removal was, *inter alia*, the fact that the case was "related to" the bankruptcy of South Louisiana currently docketed in the U.S. Bankruptcy Court for the Eastern District of Louisiana as *In re Souther Louisiana Ethanol, L.L.C.*, (No. 09-12676A).  There is no indication that a stay of proceedings during the pendency of South Louisiana's bankruptcy proceeding has either been requested or is required.  The case was subsequently transferred to the U.S. District Court for the Eastern District of Louisiana on October 31, 2011.  (R. Doc. 21).  After transfer, the case was consolidated with Civil Action No. 12-379, with the instant case remaining the master/lead case pursuant to L.R. 10.2E.  (R. Doc. 25, p. 1).

this equipment to Southern Scrap without its knowledge.  *Id.* at 7.

South Louisiana has brought claims against Defendants, Fireman's Fund Insurance Company ("Fireman's Fund"), Commerce and Industry Insurance Company ("Commerce"), and Chartis Specialty Insurance Company f/k/a American International Speciality Lines Insurance Company ("American International") for breach of contract deposit for insurance policies issued to cover South Louisiana's equipment.  *Id.* at 8-10.  South Louisiana has also brought claims against Messer, Cynthia Glaze, and Steven Zane Glaze for (1) conversion, (2) issuance of a fraudulent invoice, and (3) conspiracy with PCT regarding PCT's violation of its fiduciary duty to South Louisiana.  *Id.* at 10, 12-13.  Finally, it has brought claims against Southern Scrap for fraudulent appropriation and fraudulent transfer of a debtor's property pursuant to 11 U.S.C. § 548(a)(1)(B).  *Id.* at 11-13.

As to the instant motion, Whitney argues that Passantino was noticed as Southern Scrap's 30(b)(6) witness for 13 of the 18 designated corporate deposition subject areas.  (R. Doc. 88-1, pp. 3-4).  Passantino, who is the Operations Manager for Southern Scrap's Stainless and Alloy Facility in Baton Rouge, Louisiana, was, according to Whitney, "the employee who was directly involved in the purchase" of the equipment from PCT.  *Id.* at 4.  However, Passantino's deposition was terminated by counsel for Southern Scrap, and Whitney now seeks an Order from this Court compelling the continuation deposition of Passantino, as well an award of attorney's fees and sanctions.  The motion is opposed.

## II.  **Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1).  The Rule specifies that

3

"[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 30 provides that a party must request leave of the court to take any deposition when "the deposition would result in more than 10 depositions being taken under this rule." Rule 30(a)(2). Under Rule 30, a party may request the deposition of a corporate representative. *Id.* at 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.*

4

Although depositions are customarily limited to 7 hours, "[t]he court must allow additional time consistent with Rule 26(b)(2) . . . if the deponent, another person, or any other circumstance impedes or delays the examination."  Rule 30(d)(1).  Further, Rule 30(d)(2) provides various procedural mechanisms for limiting a deposition.  "The court may impose an appropriate sanction . . . on person who impedes, delays, or frustrates the fair examination of the deponent."  Finally, Rule 30(d)(3) provides for termination of a deposition:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably . . . oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

Rule 30(d)(3)(A).  Upon termination of a deposition, "the deposition may be resumed only by order of the court where the action is pending.  Rule 30(d)(3)(B).  Finally, courts should apply the Rules "to secure the just, speedy and inexpensive determination of every action."  Rule 1.

Conversely, Rule 37(a) permits a party to file a motion to compel where "a deponent fails to answer a question asked under Rule 30 or 31."  Rule 37(a)(3).

## III.   **Analysis**

### A.   **Rule 37 Certificate**

Although Whitney attaches a Rule 37 certificate to its motion, this certificate requests relief because "[t]his dispute cannot be resolved without the intervention of this Court because Southern Scrap has clearly demonstrated by its actions that it does not intend to abide by or be guided by the Federal Rules of Civil Procedure."  (R. Doc. 88-5, p. 2).  However, under Rule 37, Whitney was

obligated to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Rule 37(a).  Southern Scrap argues that this failure makes Whitney's motion procedurally defective.  (R. Doc. 93, p. 3).  In its Reply, Whitney argues that Southern Scrap's counsel explicitly stated that Whitney should "take it to the judge" at the same time he terminated the deposition.  (R. Doc. 95-1, p. 4).

The plain language of Rule 37 does not mandate that the discovery "conference" take a particular form, and courts in this jurisdiction have found that technical compliance with Rule 37, or the lack thereof, can be overridden when the circumstances warrant.  *Compare Larkin v. United States Dep't of the Navy*, No. 01-0527, 2002 WL 31427319, at *2 (E.D. La. Oct. 25, 2002) (Roby, M.J.) (finding that an initial conference, followed by a facsimile transmission sent to opposing counsel on the same day that a motion to compel was filed, violated the spirit of the law), *with Robinson v. LA Dock Company, LLC*, No. 99-1996, 2000 WL 1059860, at *2-*3 (E.D. La., Aug. 1, 2000) (Roby, M.J.) (finding that failure to hold an initial conference did not warrant dismissal of the motion where non-movant objected to three specific interrogatories for which a blanket work-product privilege and other vague, boilerplate language had been asserted, and circumstances indicated that a Rule 37 conference would have been futile).

Notably, the circumstances proper for consideration can include the "contentious history" of the litigants, as well as whether "court intervention is necessary regarding this discovery dispute to avoid any delay and to further the interests of justice."  *In re Miller*, 2012 WL 2953111, at *8 (Bankr.D. Colo., July 19, 2012) (discussing certification requirement under Rule 26(c)(1)).  Such

6

an approach has been used to "avoid any remote possibility of prejudice." *Freydl v. Meringolo*, 2011 WL 134972, at *3 (S.D.N.Y. Jan. 7, 2011). Courts in this District have overlooked technical compliance with discovery requirements where the same were not argued by the parties. *See, e.g.*, *Hunt v. McNeil Consumer Healthcare*, No. 11-457, 2012 WL 2342646, at *3 (E.D. La. June 20, 2012) (Roby, M.J.) (finding that party's failure to attach subpoena duces tecum to a motion for a protective order did not defeat motion where neither party raised the technical issue at oral argument, and movant attached those responses to subpoena which he thought were overbroad to his motion).

The Court notes that this is the relatively rare case where a deposition was unilaterally *terminated*. In deliberating the motion, both parties have not only moved for awards of attorney's fees, but also for *sanctions*, while accusing each other of unethical conduct. Both parties have subsequently submitted letters to the Court advocating their position and, in Whitney's case, levied further ethical charges against Southern Scrap's counsel. In sum, this is plainly a situation where communication between the parties has broken down, a "certificate" would likely serve no purpose, and judicial intervention is necessary to promote the "interests of justice."

Southern Scrap's argument that the motion is moot for lack of technical compliance with Rule 37 is of no moment. In its opposition, Southern Scrap also states that "[w]e would appreciate very much for the court to have oral argument on this matter, and perhaps, for the benefit of Mr. Passantino, this Honorable Court can assist by defining the parameters of the next deposition." (R. Doc. 93, p. 3). The Court also notes that Southern Scrap's counsel did effectively state during the deposition that Whitney should take up the termination of the deposition with the judge. (R. Doc.

7

95-1, p. 4).  The Court considers Southern Scrap's conflicting arguments as a further signal that what Southern Scrap desires is not to moot the motion, but to obtain speedy resolution.[2]

In light of these circumstances the Court elects to overlook the lack of a statement that Whitney attempted in "good faith" to resolve their dispute prior to filing the motion, and will reach the motion's merits.  The parties are cautioned, however, that any future motions to compel which fail to contain proper certification may lead to their dismissal pursuant to Rule 37(a) and Local Rule 7.4.

## B.    Southern Scrap's Submission of Audio Recording

In its opposition, Southern Scrap also states that it would send to the Court a recording of the deposition which it argues will demonstrate the tenor of the deposition and exculpate Southern Scrap's counsel's unilateral termination of the same.  *See* (R. Doc. 93, p. 2).  Southern Scrap does not indicate that a copy of the recording would be sent to opposing counsel, and there is no indication that this occurred.  *See id.*  After filing its opposition, Southern Scrap in fact submitted a letter to the Court on March 6, 2013, which contained a DVD; Southern Scrap contended that the DVD contained the recording in question.  Consequently, Whitney submitted a letter to the Court on March 7, 2013, which contested the manner in which Southern Scrap's letter reached the Court.[3]

---

[2]This may be the parties' only point of agreement: Whitney itself also requests that the continuation deposition, if ordered, should take place "in a conference room at the Federal District Court . . . in the presence of the Magistrate Judge or alternatively that the Magistrate Judge be available by telephone during the deposition."  (R. Doc. 88-1, p. 22).

[3]Neither letter was filed into the record.  Whitney's letter contested, the submission of the recording *ex parte*, argued that the recording was improper, and requested that the recording be returned to Southern Scrap's counsel.

However, Whitney's Reply does not raise the issue of the letter.  *See* (R. Doc. 95).[4]

The Court finds that the recording submitted by Southern Scrap was taken in violation of Rule 30(b) and also possibly violated Louisiana Rules of Professional Conduct Rules 3.4 and 8.4, and will not be considered or entertained by the Court because the recording was done surreptitiously.[5]  *See Northfield Insurance Co. v. George E. Buisson Realty Co., Inc.*, 1999 WL 804076, at *2 (E.D. La. Oct. 7, 1999).

### C.  Merits of Motion

#### 1.  Termination of Deposition and Procedural Deficiency

The first issue is whether Southern Scrap's failure to move for a protective order under Rule 30(d)(3) forecloses consideration of the merits of the discovery conduct.  In support of the motion, Whitney argues that Southern Scrap unilaterally terminated the deposition; according to Whitney, even if Southern Scrap's counsel believed the deposition was being conducted in bad faith, counsel failed to follow the proper procedure of requesting a recess and presenting the matter to the Court pursuant to Rule 30(d).  (R. Doc. 88-1, pp. 5-8).  Whitney argues that instead of taking these actions, Southern Scrap's counsel inappropriately terminated the deposition, which only the Court has authority to do.  *See id.* at 16-17.

---

[4]The Court notes that at oral argument on the motion Whitney represented that it was leaving the issues in the letter "alone," but that the letter had "asked" for the recording to be returned.  The Court stated in response that it had not, and should not, listen to the recording.

[5]Although not necessary the Court's decision whether or not to reach consideration of the recording, the Court also notes that the recording was made *ex parte* to the Court.  In other circumstances the Court has found that such *ex parte* submissions were not properly considered, even where they might have reflected a change in litigation strategy and pertained to motions which the Court might have otherwise granted.  *See Thomas v. Rockin D Marine Services, LLC*, No. 12-1315, 2013 WL 173767, at *2 (E.D. La. Jan. 16, 2013) (recounting history of case, in which notwithstanding the fact that a party's medical condition was at issue, opposing counsel's unilateral submission of the proposed tests to the Court contravened the Court's explicit instructions, which resulted in denial of the motion).

In opposition, Southern Scrap argues that at the deposition it gave notice to Whitney that if it did not desist in improperly harassing Passantino and asking duplicitous questions, the deposition would be terminated.  (R. Doc. 93, pp. 1-2).  Southern Scrap's counsel argues that it is his duty as counsel to protect client witnesses from oppression during a deposition, and that failing to terminate the deposition would mean that counsel neglected his obligation.  *Id.* at 3.

As noted above, Rule 30 provides that a party may move to terminate a deposition if "it is being conducted in bad faith or in a manner that unreasonably . . . oppresses the deponent."  *Id.* However, the Rule also states that the protesting party must then file a motion for a protective order with the Court under Rule 30(d)(3).  *Id.*  As Whitney points out, Southern Scrap has never moved for any such Order.

The majority of cases find that in the context of discovery disputes, the Court can reach the merits of the issue regardless which party actually seeks to enlist the Court's assistance.  "[T]here are many occasions in which a party taking a deposition may ask a question a deponent or counsel consider improper, but will be unable to show is asked in bad faith . . . . The courts should apply a more practical and realistic approach evaluating each motion on a case-by-case basis."  *Brincko v. Rio Properties, Inc.*, 278 F.R.D. 576, 584 (D. Nev. 2011) (finding, in Rule 30(c) dispute, that Rule 37(a) and Rule 30(d)(3) were available as deposition enforcement mechanisms).  This flexibility is reflected in the majority of other recent cases.  *See, e.g.*, *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 589 n.4 (S.D. Tex. 2011) (finding that a party's failure to file a motion did not foreclose consideration of the merits of a discovery dispute); *Coach, Inc. v. Hubert Keller, Inc.*, --- F. Supp. 2d ----, 2012 WL 6714388, at *6 (S.D. Ga. Dec. 19, 2012) (reaching merits of motion filed by party

10

other than deponent); *ACF Western USA, Inc. v. Travelers Casualty Co. of America*, 2012 WL 5838865, at *3-*4 (E.D. Cal. Nov. 16, 2012) (reaching merits of objections even after noting that motion was procedurally improper); *Youngblood v. City of Paducah*, 2011 WL 6749024, at *2 (W.D. Ky. Dec. 22, 2011) (reaching merits of dispute when it arose under opposing party's motion to compel).

Here, considering the strong advocation for "case by case" adjudication of discovery disputes, the Court finds that it should reach the merits of the discovery conduct even where no 30(d)(3) motion for a protective order was previously filed into the Court.

As to the merits of the dispute, there is no question that Passantino's deposition was improperly terminated.  Although at oral argument Southern Scrap's counsel argued that the deposition had become heated, the Court noted that even assuming *arguendo* that this was true, Southern Scrap had failed to move for a protective order under Rule 30(d)(3).  Both the improper termination, as well as the failure to move for a protective order, weigh heavily in the Court's decision to craft an reasonable remedy to the parties' current discovery problems.

### 2.    Lack of Capacity

Whitney argues that Passantino did not adequately prepare for the deposition.  Specifically, Whitney argues that Passantino was asked a series of questions regarding "certified weight tickets," which he was unable to answer directly.  Instead, Passantino attempted to explain the "process" by which Southern Scrap evaluated the scrap metal brought to it for purchase.  *See* (R. Doc. 88-1, pp. 14-15).  Whitney argues that Southern Scrap's counsel objected, and then unilaterally terminated the deposition.  Southern Scrap does not specifically rebut this charge.

11

Rule 30(b)(6) provides that after an organization's deposition has been duly noticed, "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.* Such persons "*must* testify about information known or reasonably available to the organization." *Id.* (emphasis added). Because a corporation appears vicariously at such depositions through an agent, "[i]f that agent is not knowledgeable about relevant facts, and the principal has failed to designate an *available, knowledgeable,* and *readily identifiable* witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). "This extends not only to facts, but also to subjective beliefs and opinions." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 & n.18 (5th Cir. 2006).[6]

At oral argument, Whitney contended that its notice of deposition specifically listed five "certified weight tickets" on which it requested responses from Passantino; it argues that his failure to provide adequate answers shows that he was not competent to testify on those matters. Upon review of the deposition transcript, however, the Court found that Passantino was not necessarily unprepared to answer the topics for which Whitney sought answers. Passantino's deposition responses indicate that he was familiar with the "certified weight tickets" brought to his attention at the deposition; the transcript, as well as the Court's inquiry at oral argument, also makes clear that

---

[6]Whitney cites several cases in support of its position, but these cases are not on point. For example, in *North American Specialty Ins. Co. v. Iberville Coatings, Inc.*, 2002 WL 34423046 (M.D. La. Jan. 18, 2002), the issue of "capacity" centered on the review of corporate documents in preparation for the deposition. The Court noted that "[e]ven if the relevant documents are voluminous, and review of them would be burdensome, the deponents still are required to review them to prepare for the deposition." *Id.* at *2. Similarly, in *Cox Communications of Louisiana, LLC v. I.C. Fiber Louisiana, LLC*, No. 01-3828, 2003 WL 22326400, at *3 (E.D. La. Oct. 6, 2003), the Court found a lack of capacity because a certain 30(b)(6) deponent had taken some, but not all, of the photographs and was incompetent to testify as to the others.

there was a degree of confusion regarding the questions he was asked.  Passantino's inappropriate attempts to "explain" the apparent discrepancy between the weight listed on several of the "certified weight tickets" by going through the "process" by which a specific number appeared on the ticket are, at least in part, a figment of this confusion.[7]  Passantino's failure to actually answer the questions posed, or adequately indicate his confusion, may be improper, but it does not render him incompetent to testify.[8]  As such, the Court finds that Passantino was properly tendered for purposes of Rule 30.

### 3.    Improper Objections Under Rule 30(c)(2); Actions as "Intermediary"

Whitney also argues that Southern Scrap's counsel violated Rule 30(c)(2) by making objections not based on privilege, the form of a question, or the responsiveness of an answer.  *Id.* at 16.  According to Whitney, Southern Scrap's counsel also "constantly disrupted" the deposition by (1) suggesting the order of questioning to Whitney's counsel; (2) repeatedly rephrasing questions posed to the witness; (3) stating that he, as counsel, did not understand the question; and finally, (4) leaving the room with a witness while an answer to a specific question was pending and a line of questioning remained to be completed.  (R. Doc. 88, pp. 5-8).

---

[7]The fact that the deposition was terminated would also make it difficult for the Court to determine whether Passantino's answers were simply not to counsel's liking, or whether they evinced a lack of capacity.

[8]Further, Whitney has entirely failed to argue why the other two 30(b)(6) witnesses which Southern Scrap produced on November 27, 2012 to testify as to Whitney's other requests were neither "readily identifiable" nor "available."  Although this issue was not argued by either party, the Court notes that the facts of *Resolution Trust* are distinguishable from the instant case.  In *Resolution Trust*, the court did not specify whether "available" meant "available immediately."  However, the *Resolution Trust* court found important the fact that counsel had traveled from Washington, DC to Houston, TX to conduct what ultimately turned out to be a useless deposition.  985 F.2d at 197.  In this case, by contrast, the deposition involved two local law firms; further, two other 30(b)(6) witnesses were deposed during the same day as Passantino on other subject areas.  There is no indication that these witnesses were not "available" at the time Passantino was deposed, or that either counsel ever explored the possibility of replacing Passantino with one of these other witnesses.

In opposition, Southern Scrap argues that Whitney asked repetitive questions, and refused to allow Passantino to answer the questions in his own words.  (R. Doc. 93, pp. 1-2).  Southern Scrap does not explicitly respond to Whitney's argument that Southern Scrap's counsel sought to become an "intermediary" during the deposition.

"The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence."  Rule 30(c)(1).  "An objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Rule 30(c)(2); *see Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-3209, 09-6221, 2011 WL 164636, at *5-*6 (E.D. La. Jan. 19, 2011) (finding violation of Rule 30(c) where the majority of objections were inappropriate).  Moreover, "if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner . . . then it would be permissible to instruct a deponent not to answer and to move for a protective order under Rule 30(d)(3)."  *Rangel*, 274 F.R.D. at 591 (citing cases).

"During the taking of a deposition the witness has, *in general*, the same rights and privileges as would a witness testifying in court at trial."  8A Wright, Miller, and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994) (emphasis added).  "Conduct that is not permissible in the courtroom during the questioning of a witness is *ordinarily* not permissible at a deposition."  *Landers v. Kevin Gros Offshore, L.L.C.*, No. 08-1293, 2009 WL 2046587, at *1 (E.D. La. July 13, 2009) (quotation omitted) (imposing sanctions after witness had been unsuccessfully deposed three times).

Admittedly, these judicial interpretations of Rule 30(c) evince *some* pliability as to deposition conduct or the propriety of an objection.  However, after considering the deposition transcript and the representations of counsel at oral argument, the Court finds that the following conduct by Southern Scrap's counsel was clearly inappropriate: (1) unilaterally taking a "break" in the deposition, and speaking to Passantino outside the deposition;[9] (2) repeatedly interjecting during the course of the deposition;[10] and (3) allowing Joel Dupre, Southern Scrap's president, ("Dupre") to make statements on the record without advising his client that such statements were inappropriate.[11]  This conduct was in violation of Rule 30(d)(2).[12]

### 4.    Attorney's Fees; Sanctions

The next issue is what sanction to impose for Southern Scrap's discovery abuses.  Whitney has requested that the Court impose sanctions on Southern Scrap's counsel for his inappropriate behavior at the deposition, as well as attorney's fees incurred in filing the instant motion to compel.  (R. Doc. 88-1, pp. 21-22.  In opposition, Southern Scrap reiterated its arguments that its conduct was justifiable to protect Passantino from undue harassment and abuse during the deposition.  (R. Doc.

---

[9]*Hall v. Clifton Precision*, 150 F.R.D. 525, 528-29 (E.D. Pa. 1993).

[10]*Jones v. J.C. Penny's Department Stores, Inc.*, 228 F.R.D. 190, 196-98 (W.D.N.Y. 2005) (find that counsel's repeated interruptions of questioning, and making suggestive remarks in response to questions posed to deponent, violated Rule 30).

[11]*GMAC Bank v. HTFC Corp.*, 252 F.R.D. 253, 257 (E.D. Pa. 2008).  The Court also notes that although Southern Scrap contended that Whitney asked Passantino duplicitous questions at the deposition, in fact the questions pertained to different aspects of particular documents - i.e., Whitney questioned Passantino regarding the *time* interval on a specific weight ticket, and then questioned him on the *weight* amount on that same ticket.  *See Morales v. Zordo, Inc.*, 204 F.R.D. 50, 53-55 (S.D.N.Y. 2001).

[12]Rule 30(d)(2).  *See also* Frank A. Ray, *Lawyers' Conduct in Depositions: Professionalism Applies*, Columbus Bar L.Q. 7 (Winter 2010).

15

93, p. 1, 3).

The plain language of Rule 30(d)(2) provides that the Court may impose on a party who impedes a deposition "an appropriate sanction - including the reasonable expenses and attorney's fees incurred by any party." *Id.* Such fees may be also "be imposed on a non-party witness as well as a party or attorney." *Landers*, 2009 WL 2046587, at *2 (quoting Rule 30(d) Advisory Committee's Note, 1993 amendments). The word "incurred" appears in the Rule without limitation, and "[t]he full scope of the sanctions available under Rule 30(d)(2) is not expressly described in the text of the Rule." *Glick v. Molloy*, 2013 WL 140100, at *2 (D. Mont. Jan. 10, 2013). Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action. *See, e.g, Rangel*, 274 F.R.D. at 594 (improperly instructing deponent not to answer); *Bordelon Marine*, 2011 WL 164636 at *3-*6 (numerous objections to deposition questions); *Pinson v. Northern Tool Equipment Co., Inc.*, 2012 WL 5286933, at *3 (S.D. Miss. Oct. 24, 2012) (same).[13]

Recent federal court decisions in Louisiana have applied Rule 30's prospective remedy broadly. *See Howell v. Avante Services, LLC*, No. 12-293, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) (Vance, J.) (finding that payment of attorney's fees for deposition of non-party was an "appropriate sanction" under Rule 30(d)(2)); *Soule v. RSC Equipment Rental, Inc.*, No. 11-2022, 2012 WL 5060059, at *1-*2 (E.D. La. Oct. 18, 2012) (applying Rule 30(d)(2), and ordering parties not only to conduct all future depositions "in a professional manner," as well as enjoining specific

---

[13]Although in this instance it appears that the deposition was not accompanied by a Rule 45 subpoena, the parties do not contest that the original 30(b)(6) deposition was not properly "noticed." *See* Rule 30(b)(1).

16

conduct); *Todd v. Precision Boilers, Inc.*, 2008 WL 4722338, at *1 (W.D. La. Oct. 24. 2008) (ordering re-deposition where deponent's attorney refused to allow questioning for the full 7-hour period specified in Rule 30(d)(1)).

At oral argument, Southern Scrap contested any award of attorney's fees.  The Court found, however, that the conduct of Southern Scrap's counsel plainly violated Rule 30(d)(2), leaving Southern Scrap responsible for sanctions.[14]  Mitigating against the imposition of a harsh sanction, however, was the fact that there was at least some confusion about the questions posed to Passantino - and the Court notes that attempts by counsel to clarify the reason why the witness answered the question in the manner described during oral argument were largely unsuccessful.

On balance, the Court found that awarding payment of the reasonable attorney's fees and costs which Whitney "incurred" in connection with filing the instant motion to compel a continuation deposition, was an appropriate monetary sanction within the broad remedial powers granted to the Court under Rule 30(d)(2).  *See* Rule 30(d)(2); *Bordelon Marine*, 2011 WL 164636, at *6 (awarding $1,500 in sanctions against deponent's attorney for deposition conduct); *Landers*, 2009 WL 2046587, at *4 (same).  The Court notes, however, that unlike *Bordelon Marine* and *Landers*, the attorney's fees in this case should be charged against Southern Scrap, and not directly to Southern Scrap's counsel, because there is indication that one of Southern Scrap's corporate representatives, Dupre, was at least partially to blame for the deposition problems, in that he

---

[14]The Court also notes that Whitney failed to manufacture a constructive "failure to appear" based on Passantino's capacity, and therefore attorney's fees are not available on this basis alone.  Moreover, Whitney's technical failure to file a Rule 37 certificate need not be considered here, because Rule 30(d)(2) provides an independent means by which to grant the award of attorney's fees in this case.

interjected on the record.  Courts have imposed fees against a client in circumstances where the client's inappropriate behavior could be inferred.  *See Howell*, 2013 WL 824715, at *3-*5.  In this case, the client's inappropriate behavior was placed directly on the record.  *See* (R. Doc. 93-1, pp. 47-48).

### 5.    Continuation Deposition

Finally, Whitney argues that it is entitled to a continuation deposition on the yet-unexplored topics set out in its 30(b)(6) deposition notice.  (R. Doc. 88-1, p. 21).  Southern Scrap indicates that it has no opposition to continuing the deposition, suggests that the resumed deposition take place before the undersigned U.S. Magistrate Judge.  (R. Doc. 93, p. 2-4).

At oral argument, and for reasons specified above, the Court found that a continuation deposition was warranted pursuant to Rule 30(d)(2).  The Court ordered Passantino to appear for a continuation deposition on April 4, 2013, at 10:00 a.m., in the Attorney Conference Center in the Hale Boggs Federal Building, 500 Poydras Street, Room 364, New Orleans, Louisiana.

The Court also notes that the time elapsed at Passantino's initial deposition is not specified. Rule 30(d)(1) states that "[u]nless . . . ordered by the court, a deposition is limited to 1 day of 7 hours.  The Court must allow additional time . . . if the deponent, another person, or any other circumstance impedes or delays the examination."  Rule 30(d)(1).  Although consideration of the transcript and the representations of counsel indicate that the deposition did not deteriorate until shortly before Southern Scrap's counsel took a "break," Southern Scrap's counsel did begin making improper objections virtually from the outset of the deposition.  Therefore, the Court now orders that Passantino's continuation deposition shall proceed up to the full 7 hours mandated by the Rule.

18

### 6.      Southern Scrap's Request for Sanctions and Attorney's Fees

Finally, Southern Scrap requested in its opposition that the Court award attorney's fees and sanctions against Whitney pursuant to Rule 37(a)(5)(B) for its having to file the opposition and for re-producing Passantino.  (R. Doc. 93, p. 4).  Southern Scrap also requests sanctions against Whitney for Whitney's inappropriate conduct at the deposition.  *Id.*  At oral argument, Southern Scrap failed to adequately re-urge its request for attorney's fees or sanctions.

Rule 37(a)(5)(B) states that if a discovery motion is denied, "the Court must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . expenses incurred in opposing the motion, including attorney's fees."  The Rule also states that if the motion is granted in part and denied in part, "the court *may*, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  *Id.* at 37(a)(5)(C) (emphasis added); *Jackson v. Wilson Welding Service, Inc.*, No. 10-2843, 2011 WL 5119045, at *5 (E.D. La. Oct. 27, 2011) (declining to award fees after finding that three objections to requests for admission were "well founded").

The Court finds that there are no grounds to award attorney's fees or sanctions to Southern Scrap.  First, Rule 37(a)(5)(B) is inapplicable because Whitney has prevailed in part on its motion for a continuation deposition.  Moreover, as to Rule 37(a)(5)(C), although Whitney's motion was denied "in part" in that the Court denied Whitney's request for sanctions, the Court exercises its discretion and declines to "apportion" fees between the parties.

Other courts in this district have also determined that where inappropriate deposition conduct warrants an award of sanctions, the award can be imposed entirely upon the more culpable party.

19

*See Bordelon Marine*, 2011 WL 164636, at *5.  *Bordelon Marine*'s use of the "broad" 30(d)(2) remedy is instructive for resolution of the discretionary "apportionment" question under Rule 37(a)(5)(C); the Court finds that Southern Scrap is not entitled to any reapportionment of fees here.

## IV.      Conclusion

Accordingly,

**IT IS ORDERED** that Defendant, Whitney Bank's ("Whitney") **Motion of Whitney Bank to Compel the Continuation of the 30(b)(6) Deposition of Southern Scrap Metal Company, L.L.C.'s Designated Deponent and Motion for Attorney's Fees and Sanctions (R. Doc. 88)** is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED** as to a continuation deposition of Defendant, Southern Scrap Metals Co., L.L.C.'s, ("Southern Scrap") 30(b)(6) witness, Jason Passantino ("Passantino").  The continuation deposition of Passantino shall take place on **Thursday, April 4, 2013**, at **10:00 a.m.** in the Attorney Conference Center in the Hale Boggs Federal Building, 500 Poydras Street, Room 364, New Orleans, Louisiana.  The continuation deposition is to last no longer than 7 hours.

It is **GRANTED** as to Whitney's request for Attorney's Fees and Costs.  Whitney shall file a motion to fix attorney's fees into the record by **Wednesday, April 3, 2013**, along with: (1) an affidavit attesting to its attorneys' education, background, skills, and experience; (2) sufficient evidence of rates charges in other cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2.  Any opposition to the fee application shall be filed no later than **Wednesday, April 10, 2013**, and the motion shall be heard on that date **without oral argument**.

20

It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the request for attorney's fees and sanctions filed by

Southern Scrap in its **Memorandum in Opposition to Plaintiff's Motion to Compel Continuance**

**of 30(b)(6) Depositions (R. Doc. 93)** is **DENIED**.

New Orleans, Louisiana, this 22nd day of March 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**