UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTH LOUISIANA ETHANOL, L.L.C., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:  11-2715 c/w**<br>**12-0379** |
| **ERIC JACOB MESSER, ET AL.** | **SECTION: "B" (4)** |

<u>ORDER</u>

Before the Court is Defendant, Whitney Bank's, ("Whitney") **Motion for Attorney's Fees**

**(R. Doc. 108)**,[1] which was submitted under the direction of the Court.  *See* (R. Doc. 104).

Defendant, Southern Scrap Material Co., LLC's, ("Southern Scrap") opposes the Motion (R. Doc.

116); Whitney has filed a Supplemental Declaration (R. Doc. 141), which Southern Scrap has in turn

opposed.  (R. Doc. 143).  The motion was heard on the briefs on Wednesday, April 10, 2013.[2]

**I.**    <u>**Factual Background**</u>

This is a suit for breach of contract and fraud filed by Plaintiff, South Louisiana Ethanol,

---

[1]The full name of Whitney's motion requesting fees is "Verified Motion of Whitney Bank to Fix Attorney's Fees and Costs Awarded to Whitney Bank by the Court in Granting the Motion of Whitney Bank to Compel the Continuation of the 30(b)(6) Deposition of Southern Scrap Metal Company, L.L.C.'s Designated Deponent and Motion for Attorney's Fees, Costs and Sanctions."

[2]Although both R. Docs. 141 and 143 were filed into the record after April 10, 2013, these filings were made with leave of the Court pursuant to its oral instructions at a May 15, 2013 oral argument on Southern Scrap's Motion to Continue Submission of Whitney's Motion to Fix Fees to Allow for Limited Discovery.  *See* (R. Doc. 157).

L.L.C. ("South Louisiana").[3]  In its Complaint, South Louisiana alleges that in 2006 it became the owner of a forty-nine acre site in Belle Chase, Louisiana.  (R. Doc. 1-1, p. 3).  The site contained a non-operational ethanol plant, which South Louisiana intended to restore and reconfigure.  *Id.*  To that end, it contracted with ENGlobal Engineering, Inc. ("EEI") to produce engineering plans to restore the facility.  *Id.*  EEI then designated ENGlobal Construction Resources, Inc. ("ENG") as the "Prime Subcontractor" for the restoration project.  *Id.*  ENG then "entered into various subcontracts" with Precision Combustion Technology, L.L.C. ("PCT"), whose members included Robert Leon Russell ("Russell"), Eric Jacob Messer ("Messer"), Cyntha Glaze and Steven Zane Glaze (collectively, the "PCT Employees").  *Id.*  Among other tasks, the PCT employees routinely entered subcontracts on behalf of PCT, which South Louisiana alleges incorporated the terms of its contract with EEI by reference.  *Id.*

One of the tasks PCT conducted under its contractual obligations was the purchase of equipment for South Louisiana's ethanol plant.  *Id.*  PCT's practice was to purchase equipment for shipment to PCT's yard, and to bill South Louisiana directly for the purchase.  *Id.* at 5.  However, South Louisiana alleges that certain equipment so purchased arrived at PCT's yard and was then sold at a discount to a third party, Southern Scrap.  *Id.*  In the instant suit, South Louisiana alleges that PCT sold this equipment to Southern Scrap without its knowledge.  *Id.* at 7.

---

[3]South Louisiana originally filed this case in the Twenty-Third Judicial District Court of Louisiana, Ascension Parish, on June 8, 2011 (R. Doc. 1-1, p. 1).  The case was duly removed to the U.S. District Court for the Middle District of Louisiana on June 24, 2011.  (R. Doc. 1).  The basis for removal was, *inter alia*, the fact that the case was "related to" the bankruptcy of South Louisiana currently docketed in the U.S. Bankruptcy Court for the Eastern District of Louisiana as *In re Souther Louisiana Ethanol, L.L.C.*, (No. 09-12676A).  There is no indication that a stay of proceedings during the pendency of South Louisiana's bankruptcy proceeding has either been requested or is required.  The case was subsequently transferred to the U.S. District Court for the Eastern District of Louisiana on October 31, 2011.  (R. Doc. 21).  After transfer, the case was consolidated with Civil Action No. 12-379, with the instant case remaining the master/lead case pursuant to L.R. 10.2E.  (R. Doc. 25, p. 1).

South Louisiana has brought claims against Defendants, Fireman's Fund Insurance Company ("Fireman's Fund"), Commerce and Industry Insurance Company ("Commerce"), and Chartis Specialty Insurance Company f/k/a American International Speciality Lines Insurance Company ("American International") for breach of contract deposit for insurance policies issued to cover South Louisiana's equipment. *Id.* at 8-10. South Louisiana has also brought claims against Messer, Cynthia Glaze, and Steven Zane Glaze for (1) conversion, (2) issuance of a fraudulent invoice, and (3) conspiracy with PCT regarding PCT's violation of its fiduciary duty to South Louisiana. *Id.* at 10, 12-13. Finally, it has brought claims against Southern Scrap for fraudulent appropriation and fraudulent transfer of a debtor's property pursuant to 11 U.S.C. § 548(a)(1)(B). *Id.* at 11-13.

Previously, the Court awarded Whitney its reasonable fees and costs in connection with a motion to compel the re-deposition of one of Southern Scrap's 30(b)(6) witnesses, Jason Passantino ("Passantino") (R. Doc. 104). Pursuant to the Court's Order, Whitney submitted its fee application to the Court on April 3, 2013. (R. Doc. 108). The motion is opposed.

## II.  <u>Standard of Review</u>

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). After determining the lodestar, the court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway*

*Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[4]  The court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications.  *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  However, the lodestar should be modified only in exceptional cases.  *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

## III.   Analysis

### A.   Calculating a Reasonable Hourly Rate

In support of its Motion, Whitney seeks to recover fees for two attorneys: Katherine Determan, ("Determan") and Philip Jones ("Jones") (R. Doc. 108-1, pp. 1-2, 6-7).  Both attorneys have submitted sworn Declarations in support of their requested rates.  Additionally, Whitney has submitted the Affidavit of Henry A. King, ("King"), who attests that the hourly rates requested by both Jones and Determan are within the prevailing market rates for lawyers of similar experience who practice in New Orleans.  (R. Doc. 108-1, pp. 19-20).

Determan declares that she is Of Counsel to the law firm of Liskow & Lewis.  (R. Doc. 108-1.  She received her J.D. from Tulane University in 1997, and is currently admitted to practice in Louisiana, New York, and New Jersey, as well as before several federal courts.  (R. Doc. 108-1, p. 1).  She has been practicing law for 15 years.  *Id.*  Determan specializes in complex and bankruptcy litigation, and "lecture[s] at CLE programs on recent developments in both state and federal discovery laws."  *Id.*  She has requested an hourly rate of $225.00 per hour.  *Id.* at 2.

---

[4]The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Johnson*, 488 F.2d at 717-719.

Jones declares that he is a Shareholder in the law firm of Liskow & Lewis (R. Doc. 108-1, p. 6).  Jones received his J.D. from Louisiana State University in 1974, and is currently admitted to practice in Louisiana, as well as several federal courts.  *Id.* at 12.  He has been practicing law for 33 years, and has been a partner at Liskow & Lewis since 1985, where his practice focuses on bankruptcy and commercial litigation.  *Id.* at 13.  During that time, he has garnered substantial professional recognition, including "Best Lawyers in America" in 2006 and "Chambers Best Lawyers in America" 2007.  *Id.* at 14.  He has requested an hourly rate of $385.00 per hour.

In opposition, Southern Scrap does not specifically contest the reasonableness of either Determan or Jones' rates.  *See* (R. Doc. 116).  Instead, they argue that Whitney's fee award should be calculated at a rate of $225.00 per hour, because Jones should not be able to recover at all.  *Id.* at 17.  Since Southern Scrap does not contest either the reasonableness of Jones' or Determan's individual rate, the Court finds these rates are reasonable.[5]

B.    **Calculating the Reasonable Hours Expended**

1.    **Materials Submitted**

In support of its Motion, Whitney submits invoices which include 99.9 hours for Determan,

---

[5]The Court finds that $385.00 is within the reasonable range of hourly rates for an attorney of Jones' experience. *See Yelton v. PHI, Inc.*, Nos. 09-3144, 09-3475, 09-3551, 09-3459, 09-3814, 09-3496, 09-3847, 09-4197, 09-4182, 09-4350, 10-0008, 10-1328, 2012 WL 3441826, at *3, *6 (E.D. La. Aug. 14, 2012) (Roby, M.J.) (finding that hourly rate of $400.00 was reasonable for attorney with 37 years of practice experience who had tried complex litigation cases in 14 states).  Similarly, the Court finds that $225.00 is a reasonable rate for an attorney of Determan's experience. *See, e.g., Abel Maritime Investors, LP v. Sea Mar Management, LLC*, No. 08-1700, 2011 WL 2550505, art *4 (E.D. La. June 27, 2011) (Roby, M.J.) (finding rate of $175.00 per hour was reasonable for attorney with two years of practice experience).

and 17.0 for Jones.  (R. Doc. 108-2, p. 5).[6]  However, Whitney does not request compensation for all of these hours, but voluntarily made certain reductions for the hours requested for both attorneys, exercising billing judgment.  Specifically, Whitney breaks its attorneys' time into two separate billing "intervals" - one in December 2012, and the other in February and March 2013.  *Id.*

As to the December billing "interval," which includes 61.4 hours billed by Determan, Whitney proposes reducing Determan's total hours by half, resulting in a figure of $6,907.50.  *Id.* As to the February-March 2013 "interval," Whitney argues that it includes 37.5 hours from Determan, and 17.0 hours from Jones, for a total of $14,982.50.  *Id.* at 6.  Whitney also proposes reducing this *amount* by one third, resulting in a total bill of $10,038.27.  *Id.*  Whitney proposes a total award amount of $16,945.77.[7]

In further support of the reasonableness of its requested hours, and pursuant to the Court's direction following a May 15, 2013 oral argument on a related motion to permit limited discovery in connection with the fee application, Whitney submitted a supplemental memorandum.  (R. Doc. 141).  Therein, Whitney provides a Supplemental Declaration from Jones, who states that the list of billing entries "was not an invoice but appeared to be so due to its having been produced by the

---

[6]In support of its Motion, Whitney's "invoices" attached to both its initial and supplemental submissions are identical, with the exception that Whitney's Supplemental submission does not include an address from Whitney Bank. *Compare* (R. Doc. 108-1, p. 8), *with* (R. Doc. 141, p. 4).

[7]Whitney also proposed, in its initial Memorandum in Support of its fee application, that the $6,907.50 amount in the first "interval" be reduced by one-third to "avoid[] any issue of whether the December work had to be duplicated." *Id.* at 5-6.  Nonetheless, Whitney then proceeded to calculate its total award figure by taking as a total first "interval" figure the intermediate $6,907.50 which preceded the proposed one-third reduction.  However, Whitney then calculates its total award figure for the second "interval" from the final figure, which involves a one-third reduction.  Whitney provides no explanation for why it calculated these two figures from different steps in the calculation process; however, the supplemental declaration which Jones submitted makes no mention of the "further" reduction in the billing entries, and calculates the total proposed fee award from the "intermediate" $6,907.50 figure.

accounting department using its software which produces documents in the form of invoices." (R. Doc. 141, p. 3). Whitney has provided a list of billing entries along with its Supplemental Memorandum "to correct any . . . implication" that the entries had in fact been submitted to Whitney. Jones also declares that "Whitney bank has not paid the amounts reflected on [the attached invoice] nor is it obligated to do so under its engagement agreement with Liskow and Lewis." *Id.* Whitney has also included a list of billing entries in this case. *Id.* at 4-6.

In opposition, and after considering Whitney's supplemental materials, Southern Scrap asserted that Whitney should be awarded $0.00 in attorney's fees, due to the fact that Whitney had failed to comply with the Court's Order at the May 15, 2013 oral argument. (R. Doc. 143, p. 3).[8] Specifically, Southern Scrap argued that Whitney's supplemental declaration failed to comply with L.R. 54.2 because it does not include contemporaneous time entries, and Whitney once again failed to produce its original billing entries. (R. Doc. 143, p. 1). Southern Scrap also argued that under L.R. 54.2, "it is wholly improper for Whitney's counsel to make changes to the original time entries prior to submitting them to the Court for reimbursement and then refuse to produce the original time sheets/entries." *See id.* at 2-3.

The Court's Order arising in connection with the May 15, 2013 oral argument required Whitney to supplement the record on three points: (1) whether its submissions were invoices sent to Whitney, or contemporaneous time records; (2) whether the nature of the relationship between

---

[8]In its original opposition, Southern Scrap had argued that virtually none of the billing entries requested by Whitney were reasonable, that Whitney has not exercised billing judgment, that Whitney sought to recover for work which was unsuccessful, that Mr. Jones' work was duplicative, and that many of the entries contained excessive time. *See* (R. Doc. 116, pp. 5-6). Southern Scrap argued that instead of the voluntary reductions, Whitney should be awarded 4.5 hours of attorney time at the $225 per hour rate, for a total award of $1,125.00 in fees. *See* (R. Doc. 116, pp. 5-6, 17).

Whitney and its attorneys was a contingency-fee relationship or a direct billing relationship; and (3) more adequately demonstrate the exercise of billing judgment as to the time requested.  (R. Doc. 157, p. 7).

The Court finds that, contrary to Southern Scrap's assertions, Whitney's Supplemental Declaration substantially comports with both the Court's instructions at the May 15, 2013 oral argument, and with L.R. 54.2.  The Supplemental Declaration explains that Jones and Determan's entries were contemporaneous.  (R. Doc. 141, p. 1).  The Supplemental Declaration also states that "Whitney Bank has not paid the amounts reflected on Exhibit No. 1 to the Jones Declaration nor is it obligated to do so under its engagement agreement with Liskow & Lewis." *Id.* at 3.  Finally, the Supplemental Declaration includes an attempt to exercise billing judgment, as it includes a reduction from the amounts on the invoices in order to arrive at what it contends is a reasonable fee.  *Id.* Having found that Whitney has properly supplemented its original Motion for Attorney's Fees, the Court may now consider the merits of the underlying Motion.

## 2.        Calculation of Reasonable Hours

The Court previously awarded "payment of the reasonable attorney's fees and costs which Whitney 'incurred' in connection with . . . the instant motion to compel a continuation deposition." (R. Doc. 104, p. 17).  In its Order, the Court also considered whether fees should be apportioned, and declined to do so.  *See id.*

The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment."  *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th

8

Cir.1997); *Walker,* 99 F.3d at 770.  Attorneys must exercise "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards. *Id.* (citing *Walker v. United States Dep't of Housing & Urban Development,* 99 F.3d 761, 769 (5th Cir.1996)).  Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request.  *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987).

Hours that are not properly billed to one's client also are not properly billed to one's adversary.  *Hensley*, 461 U.S. at 434.  The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended. *Id.*  Alternatively, this Court can conduct a line-by-line analysis of the time report.  *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *overruled on other grounds by Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) (finding that a percentage reduction is simply an "abbreviated way of performing" a line-by-line analysis).

The Court finds that Whitney has substantially complied with its Order, and that the entries which appear on its "invoice" are reasonably clear.[9]  In order to assess the reasonableness of Whitney's entries, the Court will group them into categories, and analyze the reasonableness of the time requested[10] for each category against the documents which have been submitted into the

---

[9]The Court notes, however, that Whitney has failed to calculate the number of hours which relate to either Determan or Jones as to the February-March 2013 "interval."

[10]The Court reiterates that these entries are being used for purposes of calculation only, and acknowledges that Whitney has not requested compensation for the total time requested.

record.[11]  These categories are as follows:

| Description | Jones | | Determan | | Total | |
|---|---|---|---|---|---|---|
| | *Listed* | *Allow* | *Listed* | *Allow* | *Listed* | *Allow* |
| Research, Revisions and Drafting of Motion to Compel | 0.0 | 0.0 | 85.6 | 62.5 | **85.6** | **62.5** |
| Research, Revisions, and Drafting of Reply to Opposition to Motion to Compel | 5.5 | 1.0 | 12.0 | 5.0 | **17.5** | **6.0** |
| Preparation and Attendance at Oral Argument on Motion to Compel | 7.4 | 3.3 | 2.2 | 1.3 | **9.6** | **4.6** |
| Communications | 3.0 | 2.4 | 0.1 | 0.1 | **3.1** | **2.5** |
| Other | 1.1 | 0.0 | 0.0 | 0.0 | **1.1** | **0.0** |
| **Total** | **17.0** | **6.7** | **99.9** | **68.9** | **116.9** | **75.6** |

**a.     Research, Revisions, and Drafting of Motion to Compel[12]**

As to research revisions, and drafting of the motion to compel, the Court finds the 85.6 hours

---

[11]Southern Scrap argues that Determan was not enrolled as an attorney of record at all pertinent times listed in Whitney's Motion for Attorney's Fees.  (R. Doc. 116, p. 16) (citing *Who Dat Yat Chat LLC v. Who Dat?, Inc.*, No. 10-1333, 2013 WL 594264 (E.D. La. Feb. 15, 2013) (Roby, M.J.).  The Court declines to find that such attorneys are not entitled to recover fees as a categorical matter.

[12]The entries in this category are: 05-Dec-2012 Legal research regarding Motion to Compel Southern Scrap (KMD 2.5); 06-Dec-2012 Begin drafting Motion to Compel and for costs (KMD 1.1); 06-Dec-2012 Legal research on Motion to Compel (KMD 5.6); 07-Dec-2012 Continue drafting Motion to Compel Southern Scrap (KMD 6.2); 10-Dec-2012 Continue drafting MIS Motion to Compel Southern Scrap (KMD 3.5); 10-Dec-2012 Legal research MIS Motion to Compel Southern Scrap (KMD 4.1); 11-Dec-2012 Legal research MIS Motion to Compel (KMD 4.2); 13-Dec-2012 Continue drafting MIS Motion to Compel Southern Scrap (KMD 4.2); 13-Dec-2012 Legal research MIS Motion to Compel Southern Scrap (KMD 2.9); 14-Dec-2012 Continue drafting MIS Motion to Comepl Southern Scrap (KMD 5.5); 16-Dec-2012 Continue drafting Memorandum in Suppoer of Motion to Compel Southern Scrap (KMD 7.5); 17-Dec-2012 Continue drafting Memorandum in Support Motion to Compel (KMD 7.2); 18-Dec-2012 Draft motion to compel (KMD 0.6); 18-Dec-2012 Revise memorandum in support of motion to compel (KMD 0.3); 20-Dec-2012 Revise/edit memorandum in support of motion to compel Southern Scrap (KMD 3.2); 20-Dec-2012 Revise/edit motion to compel (KMD 0.2); 20-Dec-2012 Legal research regarding motion to compel Southern Scrap (KMD 3.2); 07-Feb.2013 Review motion to compel and memorandum in support; revise; comments (KMD 1.1); 08-Feb-2013 Revise motion to compel (KMD 1.5); 11-Feb-2013 Revise/edit MIS motion to compel (KMD 1.0); 11-Feb-2013 Revise/edit motion to compel (KMD 0.5); 13-Feb-2013 Legal research regarding motion to compel (KMD 0.5); 13-Feb-2013 Revise/edit MIS motion to compel (KMD 5.5); 18-Feb-2013 Revise/edit MIS motion to compel (KMD 5.9); 19-Feb-2013 Revise/edit motion to compel (KMD 3.1); 20-Feb-2013 Prepare exhibits for motion to compel (KMD 2.5); 20-Feb-2013 Revise MIS motion to compel (KMD 1.7); 20-Feb-2013 Review final version motion to compel, MIS motion to compel and accompanying papers and exhibits (KMD 1.0).

listed for Determan on Witney's invoices to be excessive.  The Memorandum in Support of Whitney's Motion to Compel was 24 pages long, the first 12 pages of which contained both a detailed rendition of the facts in this case, but also contained numerous block quotations to a deposition transcript which took up approximately 5.5 pages in both the body of the text, as well as the footnotes.  *See* (R. Doc. 88-1, pp. 1-12).   It also contained approximately 8 pages of legal analysis on Rules 30(b)(6), 30(c)(2), 30(d)(3), as well as the propriety of raising Rule 30 objections. *Id.* at 12-20.  It then spent approximately 4 pages detailing its entitlement to fees pursuant to Rule 30, as well as a conclusion.  *See id.* at 20-24.  The Motion also contained two exhibits of deposition proceedings, which totaled over 100 pages.  *See* (R. Docs. 88-2, 88-3).

Here, given the fact that the motion involved review of a deposition transcript and required specific legal analysis of several issues therein, the Court finds that an award of 62.5 hours for Determan in connection reasonably reflects the time taken to research, draft, and revise the Motion to Compel.

### b.  Research, Revisions, and Drafting of Reply to Opposition to Motion to Compel[13]

As to research, revisions, and drafting of Whitney's Reply to Southern Scrap's Opposition to the Motion to Compel, the Court finds the 12.0 hours listed for Determan and the 5.5 hours listed for Jones to be excessive. Whitney's actual argument within the Reply totals approximately 6 pages

---

[13]The entries in this category are: 06-Mar-2013 Begin drafting Whitney's reply Brief to Southern Scrap's Opposition to Motion to Compel (KMD 3.5); 06-Mar-2013 Legal Research Regarding Rule 37.1 (KMD 1.0); 07-Mar-2013 Revise reply to opposition of Southern Scrap to motion to compel (PKJ 2.4); 07-Mar-2013 Continue drafting Whitney's Reply to Southern Scrap's Opposition to Motion to Compel; revise; edit (KMD 5.5); 08-Mar-2013 Revise reply memorandum for motion to compel (PKJ 3.1); 08-Mar-2013 Review, revise and edit Motion for Leave and Reply Brief (KMD 1.8); 08-Mar-2013 Draft Order on Motion for Leave (KMD 0.2).

in length.  (R. Doc. 98); *see, e.g.*, *Gulf Production Co., Inc. v. Hoover Oilfield Supply, Inc.*, Nos. 08-5016, 09-0104, 09-2779, 2011 WL 5299620, at *3 (E.D. La. Nov. 3, 2011) (finding that the reasonable time spent in composing uncomplicated, six-page memorandum in support of a Motion to Quash was 5.0 hours).

Whitney's billing statements also indicate that both Jones and Determan spent time revising the Reply Memorandum.  Southern Scrap argues that the presence of such "double billing" should warrant a reduction in fees.  (R. Doc. 116, pp. 8-9).  Such "double billing" may lead to a reduction in the fee award in some instances.  *See Prime Insurance Syndicate, Inc. v. Jefferson*, 547 F. Supp. 2d 568, 577 (E.D. La. 2008) (disallowing fees submitted by two counsel for inter-attorney conferences).

The Court declines to find that it is categorically unreasonable for a more senior attorney assigned to a matter to decline to "revise" a filing which is drafted by another attorney at a firm.  In this case, the researching, drafting, and revising the Reply are to be reduced to an amount which more accurately reflects the time expended by both Jones and Determan.  The Court finds that, similar to *Prime Insurance*, a reasonable award of fees in connection with the research, drafting, and revising of Whitney's Reply is 5.0 hours for Determan and 1.0 hours for Jones, noting the limited length and lack of legal analysis.

c.      **Preparation and Attendance at Oral Argument on Motion to Compel[14]**

As to preparing for and attending oral argument on the motion to compel, the Court finds the 2.2 hours listed for Determan and the 7.4 hours listed for Jones are excessive.  Jones and Determan both appeared before the Court to argue the motion, and the Court's Minute Entry reflects that a total of 23 minutes was spent thereto.  (R. Doc. 99).  The parties were ordered to appear before the Court at 11:00 a.m. on that date, and the oral argument began on the Motion concluded at approximately 12:05 p.m.  The docket sheet for this case indicates that Jones and Determan's law office is located at 701 Poydras Street in New Orleans, Louisiana.

Determan's single entry, which is limited to "attendance" in connection with the Motion, is plainly excessive and is reduced from 2.2 hours to 1.3 hours to account for both attendance at the motion hearing, as well as travel time.  Jones' two entries include both preparation for the motion, as well as attendance.  Jones is also awarded 1.3 hours for his attendance at the motion hearing, as well as an additional 2.0 hours to prepare for the hearing by reviewing the relevant pleadings and deposition transcripts.

Southern Scrap also argues that the entries should be further reduced because both Determan and Jones attended the hearing.  (R. Doc. 116, p. 9).  However, the Court finds that it is common for more than one attorney to attend an oral argument on behalf of a client.  Such attendance is even more reasonable in a circumstance where, as here, Jones made the majority of the statements on

---

[14]The entries in this category are: 12-Mar-2013 Prepare for hearing on motion to compel, review all relevant pleadings, cited jurisprudence and exhibits (including transcripts of depositions of Messrs. Dupre, Burgard and Passantino[)] (PKK 4.2); 12-Mar-2013 Prepare for and attend hearing on motion to compel (PKJ 3.2); 13-Mar-2013 Attend hearing on motion to compel (KMD 2.2).

Whitney's behalf at oral argument, but Determan, who only made several statements, nonetheless completed a substantial portion of the work on the Motion to Compel, which in turn required a detailed evaluation of a deposition transcript.

Therefore, the Court finds that a reasonable award of fees in connection with the research, drafting, and revising of Whitney's Reply is 1.3 hours for Determan and 3.3 hours for Jones.

### d.    Communications[15]

As to communications, the Court finds the 0.1 hour listed for Determan and the 3.0 hours listed for Jones to be excessive in the aggregate.  Conferences between several attorneys in a case are typically compensable to only one of those attorneys.  *See, e.g.*, *In re Skypord Global Communications, Inc.*, 450 B.R. 637, 648-49 (Bankr.S.D. Tex. 2011); *Boyles v. Texas*, 2009 WL 2215781, at *15 (S.D. Tex. July 23, 2009) (noting rule).  Here, Whitney does not seek recovery of fees for both Jones and Determan in connection with any of these entries.

Determan's 0.1 hour for a "conference" with Jones regarding the Motion is reasonable. However, Jones' two entries - first for "response to Mr. Hebert regarding audio tapes" and "confer with Mr. Turner and Ms. Determan" - are both unreasonable.

As to the first of Jones' entries, although it is not entirely clear what the "audio tapes" referred to in this first communication pertain to, the Court finds the phrase likely related to Southern Scrap's proposed submission of an audio recording to the Court.  *See* (R .Doc. 93, p. 2). The Court finds that the length of this entry is reasonable, as it pertained to the consideration of a

---

[15]The entries in this category are 06-Dec-2012 Meet with Mr. Jones regarding Motion to Compel (KMD, 0.1); 07-Mar-2013 Response to email from Mr. Hebert regarding audio tapes (PKJ 1.9); 13-Mar-2013 Confer with Ms. Determan (PKJ 1.1).

recording made surreptitiously at a deposition, and which was not provided to opposing counsel. *See id.* Therefore, Whitney's counsel would have been required to first analyze the transcript, then "guess" at Southern Scrap's intended use of the surreptitious recording, and then communicate the deductions made to "Mr. Hebert." As such, the Court awards the full 1.9 hours requested.

As to the second of Jones' entries, it is not clear what the "conference" with "Mr. Turner and Ms. Determan" pertained to, although the Court again finds it likely that the entry relates to the outcome of the hearing on the Motion to Compel. The Court finds that 1.1 hours spent on a conference concerning the outcome of this Motion is not reasonable; the Court's outcome was clear, and the parties' subsequent obligations were not expansive. Therefore, the Court finds that this entry should be reduced to 0.5 hours.

In sum, the Court awards Determan 0.1 hours, and Jones 2.4 hours, for "communications."

### e. Other

Finally, under the "other" category is one billing entry for Jones, in which Whitney requests 1.1 hours for "[r]eview draft Motion to Compel and advise Ms. Determan resumption of Southern Scrap's deposition." (R. Doc. 141, p. 5) This is an example of "block billing," which occurs when an attorney combines otherwise separable tasks. Although the usual method used to compensate for block billing is a flat reduction of a specific percentage from the award, in this case the Court finds that the single 1.1 hours has a *de minimus* impact on the total amounts requested. Therefore, the Court excludes this entry from consideration.

### C. <u>Adjusting the Lodestar</u>

After the lodestar is determined, the Court may then adjust the lodestar upward or downward

depending on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974).  To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998).

The Court has evaluated the other *Johnson* factors and finds that adjustment of the lodestar is not warranted here  Accordingly, Whitney is entitled to a total award of $15,502.50 for Determan (68.9 hours at a rate of $225 per hour) and $2,579.50 for Jones (6.7 hours at a rate of $385 per hour), for a total of $18,082.00.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Defendant, Whitney Bank's, ("Whitney") **Motion for Attorney's Fees (R. Doc. 108)** is **GRANTED**, and that Whitney's reasonable attorney's fees in the amount of $18,082.00 shall be paid by Defendant, Southern Scrap Material Co., LLC's, ("Southern Scrap") **no later than fourteen (14) days** of the issuance of this Order.

New Orleans, Louisiana, this 20th day of August 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

16